

FILED

Jun 13 2017, 5:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT/
CROSS-APPELLEE

Robert J. Palmer
May Oberfell Lorber
Mishawaka, Indiana

ATTORNEY FOR APPELLEE/
CROSS-APPELLANT

Gregory K. Blanford
The Blanford Law Office
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ralph Monty Layne, Jr., <br> *Appellant/Cross-Appellee-Petitioner,* <br><br> v. <br><br> Sudie Mae Layne, <br> *Appellee/Cross-Appellant-Respondent.* | June 13, 2017 <br><br> Court of Appeals Case No. <br> 71A04-1607-DR-1687 <br><br> Appeal from the St. Joseph <br> Superior Court <br><br> The Honorable Steven L. <br> Hostetler, Judge <br><br> Trial Court Cause No. <br> 71D07-1401-DR-37 |

**Najam, Judge.**

## Statement of the Case

Ralph Monty Layne, Jr. ("Husband") appeals the trial court's final decree, which ended his marriage to Sudie Mae Layne ("Wife"). Husband presents three issues for our review, which we consolidate and restate as one issue:

> 1. Whether the trial court abused its discretion when it divided the marital estate.

And Wife presents three issues on cross-appeal, which we consolidate and restate as:

> 2. Whether the trial court erred when it denied her motion for partial summary judgment on the issue of the enforceability of the parties' premarital agreement.

> 3. Whether the trial court abused its discretion when it excluded from the marital estate both the marital residence and a John Deere all-terrain vehicle ("ATV").

We affirm.

## Facts and Procedural History

In late 1997, Husband and Wife were engaged to be married, and, sometime before February 11, 1998, they began living together in a residence Husband owned. On February 11, 1998, the parties executed a premarital agreement whereby Husband would retain sole ownership of his residence in the event that Wife "vacate[d] the premises." Appellee's App. Vol. II at 7. Husband and Wife finally married in August 2005.

On January 24, 2014, Husband filed a petition for dissolution of the marriage. Following a hearing on May 16, 2016, the court entered a decree of dissolution and found and concluded in relevant part as follows:

12. During their marriage Husband and Wife commingled some of their assets, shared responsibility for the payment of marital debt and did some rehabilitation and remodeling work on Husband's real estate located at 23101 Roosevelt Road, South Bend, Indiana (the "Roosevelt Road Property"). . . .

13. Beginning in 2008, the parties began experiencing financial difficulties. For some time thereafter the parties' monthly obligations totaled approximately $8,000.00 a month, but with a restructuring of that debt Wife brought it down to approximately $5,000.00 a month. Husband's sole income during that period, and continuing to now, is approximately $1,700.00 per month from disability.

14. During the later years of the marriage, when the parties' income was less than their expenses, Wife repeatedly asked Husband for financial assistance in paying the bills, but such assistance was not sufficiently provided. At the same time, the parties' assets were also being used to support Wife's business that ultimately failed. Ultimately Wife filed bankruptcy (prior to the Petition Date).

15. At some point prior to the Petition Date, Husband was named as a POD payee of certificates of deposit representing the funds of Husband's elderly parents. The amount of those funds total approximately $302,000.00.

16. When Husband's father died in July of 2013, before the Petition Date, Husband inherited his parents' home on Prairie Avenue in South Bend. Husband's mother had died previously, on February 18, 2013.

17. Shortly after his father's death, Husband gave his daughter [from a previous relationship] roughly $202,000.00 from the amounts he received upon his father's death. After his father's death, Husband gave his son [from a previous relationship] the home on Prairie Avenue, as well as the contents thereof, that

Husband had inherited from his father prior to the Petition Date. The clearest evidence is that the transfer to Husband's son did not conclude until after the Petition Date. Therefore, the Prairie Avenue Property is part of the marital estate.

18. The home and contents that Husband gave to his son had a value of approximately $45,000.00. The evidence as to value was conflicting and incomplete. However, that figure was used in Wife's Contentions and would seem to be a reasonable figure based on the evidence presented.

19. Husband purchased a Gator all-terrain vehicle in March or April, 2014. He paid approximately $17,000.00 cash for the vehicle. Six months later he sold the vehicle to his son for $9,000.00. The Gator was acquired by Husband after the Petition Date and is not part of the Marital Estate.

20. Prior to the Petition Date, Father gave to his daughter approximately $202,000.00 from the moneys received upon the death of Husband's parents. However, Husband's daughter right away transferred $20,000.000 of that amount back to Husband. The Court finds that the net transfer to Husband's daughter was $182,000.000. Thereafter, Husband borrowed money from daughter during the pendency of this proceeding of at least $30,000.00.

* * *

25. There was no evidence from which the Court can determine the value of the Roosevelt Road Property at the time the parties signed the "Prenuptial Agreement."

* * *

27. Husband's father's will makes no mention of a desire to pass on money to the Husband's children.

28. Other than the insurance declarations referred to above, there was no evidence presented by either party as to the nature, extent and value of the personal property in the marital residence as of the date of final separation. The only evidence presented as to the value of the Roosevelt Road real estate was Husband's testimony that it is now worth $350,000.00. As that was the only evidence presented as to value, the Court accepts that as the value of the Roosevelt Road Property as of the date of final separation. The mortgage balance as of the Petition Date was approximately $134,111.62.

29. On the Petition Date the parties jointly owned a property located at 8622/8633 East Smith Drive, Syracuse, Indiana (the "Lake Property"). There was no evidence presented as [to] the value of the Lake Property. However, Husband testified that he believes that the value of the Lake Property is less than the amount owed. Wife's Contentions would indicate that she believes that there is $31,117.00 in equity in the Lake Property. Husband's Exhibit 9 indicates that the indebtedness owing the Fifth Third Bank secured by the Lake Property was $378,882.85 as of the Petition Date. There was testimony by Wife that there were contents, such as furniture, missing from the Lake Property. Wife also acknowledged that she removed a stainless steel refrigerator from the Lake Property. There was no evidence presented as to the value of the Lake Property Contents, missing or otherwise.

30. When Husband filed his petition for dissolution of marriage, there was approximately $100,000.00 in his bank account - the balance that remained after giving $202,000.00 to his daughter.

31. Also as of the Petition Date, Husband also had under his control $10,830.00 that remained in his parents' checking account following their deaths.

32.  There was no evidence from which a value of any personal property can be determined, except for Husband's opinion as to the values of the motor vehicles discussed below.

* * *

34.  Husband is solely liable for the [parties'] Unsecured Debts (which total $56,229.77) because of Wife's bankruptcy.  Some of the Unsecured Debts were incurred by Wife without Husband's knowledge.  However, the evidence as to which debts were incurred by Wife without Husband's knowledge was imprecise, but considered as part of the Court's conclusion discussed below that both parties dissipated assets.

35.  The parties own certain assets and owe certain liabilities, which should be equitably divided between them.

ANALYSIS AND DISCUSSION

A premarital agreement under Indiana law is "an agreement between prospective spouses that is executed in contemplation of marriage" and which "becomes effective upon marriage."  I.C. [§] 31-11-3-2.  Indiana favors such agreements, as "promoting domestic happiness and adjusting property questions that otherwise would often be the source of litigation."  *Boetsma v. Boetsma*, 768 N.E.2d 1016 (Ind. Ct. App. 2002), (internal citations omitted).  So long as the agreement is not unconscionable, and entered into freely, without fraud, duress or misrepresentation, the agreement will be liberally construed to give effect to the spouses' intentions.  *Brackin v. Brackin*, 894 N.E.2d 206 (Ind. Ct. App. 2008).

While the Agreement is not very artfully drafted, the parties' intentions can be discerned.  First of all, they referred to the Agreement as a "prenuptial" agreement both in the title and the body of the agreement.  That term has a generally recognized meaning.  Second, Husband and Wife clearly agreed that the

Wife was not to have any interest whatsoever in the property located at 23101 Roosevelt Road (the "Roosevelt Road Property"), or any of the improvements thereon. The agreement is also clear that the parties intended that if they split up, the Wife would only receive such contents as Husband agrees that she should have.

The Court finds that the Agreement was entered in contemplation of marriage. The parties were living together at the time. Husband had asked wife to marry him and had given wife a ring which Wife had accepted. During this time period, Wife told their friends that Husband and Wife were getting married.

It certainly took the parties some years after the Agreement was signed to actually get married. But ultimately they did wed. The Court finds that the Agreement was entered into in contemplation of marriage. Further, there is no evidence of any fraud, duress or misrepresentation.

* * *

The second major issue that has to be addressed is whether the funds received by Husband from his parents, and the Prairie Avenue property that he received from his parents' estates after they died, should be included in the marital estate. Husband's parents died before the Petition Date. The portion of the funds received by Husband upon his parents' deaths that remained as of the Petition Date are marital assets. The portion transferred to Husband's daughter pre-petition are not property of the marital estate. That portion is addressed by the "Dissipation Equalization Payment" described below.
Similarly, the Prairie Avenue home, and the contents thereof, were received by Husband by operation of law prior to the date of separation. However, the transfer to Husband's son did not occur until after the Petition Date. Therefore, the Prairie Avenue

Property and its contents are property of the marital estate subject to division.

The third major issue that must be addressed is the respective allegations of each of the parties that the other dissipated the marital estate. The Court finds that both parties engaged in some dissipation of the marital estate. The parties were living beyond their means. Wife did attempt to reign in Husband's spending. However, marital assets were also used by Wife to support her failing business. The Court finds that the mutual dissipation of assets by the parties offset each other and no adjustment to the division of the marital estate is made by virtue of that mutual dissipation. Both parties enjoyed the benefits of the excessive family lifestyle, and both would have benefitted if Wife's business had succeeded. Husband was aware that marital assets were being used to purchase business real estate. Whatever dissipation occurred by both parties does not justify affecting the allocation and distribution of the marital estate.

However, the above conclusion does not apply to Husband's dissipation of the net $182,000.000 he transferred to his daughter a few months prior to the Petition Date. That dissipation requires an adjustment in the distribution/allocation of the marital estate because of the amount involved and the fact that it occurred so near to the Petition Date. In its division discussed below, the Court will require Husband to transfer one-half (1/2) of that amount to Wife (that payment is referred to as the "Dissipation Equalization Payment").

* * *

DIVISION OF ASSETS AND LIABILITIES

1. The division of the marital estate is being governed by I.C. § 31-15-7-4 and I.C. § 31-15-7-5. The Court having considered all of the provisions thereof, finds that the division of the marital estate set forth hereinafter which results in Wife receiving more

than 50% of the marital estate is fair and equitable to both parties. The presumption that a substantially equal division of the marital property between the parties is just and reasonable has been rebutted after having considered all the evidence and all of the factors set forth in I.C. § 31-15-7-5. The primary basis for that deviation from a 50-50-split is Husband's significant dissipation of liquid assets a few months prior to the Petition Date. Except for the cash payment required by Husband to Wife described hereinbelow to address Husband's dissipation, the division of the marital estate would be very nearly 50-50. In light of the debts Husband will be responsible for, Husband is receiving, in effect, approximately $21,465.39 less than Wife. However, even though there is no evidence as to the value of much of the personal property being received by each party, Husband is probably receiving slightly more of such personal property in the form of household goods. Therefore, the division is fairly even when the special factors of the Dissipation Equalization Payment and the Roosevelt Road Property (due to the Prenuptial Agreement) are excluded.

2. The Court makes the findings as to the values of assets and liabilities of the marital estate of the marriage as set forth in the distribution/allocation provisions of this Order set forth below (paragraphs 3 through 8). The distribution/allocation provisions do not include the Roosevelt Road Property, because it is covered by the Prenuptial Agreement and not included in the marital estate for purposes of the distribution/allocation provisions of this Order. Similarly, the Lake Property and the indebtedness secured thereby are not addressed in the distribution/allocation provisions below, but were addressed previously in this Order.

3. Wife should receive the full right, title, interest and possession to the following assets: [Wife's 2004 GMC Envoy--$6,000; Household Goods and Miscellaneous Personal Property currently in Wife's possession and control--unknown value; Cash

payment from Husband to Wife (Dissipation Equalization Payment)--$91,000.]

Total Marital Asset Value to Wife $97,000.00

4. Wife should assume and pay the following marital debts: [Loan on Wife's Vehicle--amount unknown; One-half of any state and federal income taxes for 2012.]

Total Marital Liabilities to be paid by Wife $0.00

5. Net Marital Estate to Wife $97,000.00

6. Husband should receive the full right, title, interest and possession to the following assets: [All personal property presently located at Roosevelt Road Property—unknown value; CD as of Petition Date--$100,936.00; Bank Account as of Petition Date--$10,830.00; 1997 Ford F250 and 2000 Ford Expedition--$6,000.00; Prairie Avenue Real Estate and Contents--$45,000.00.]

Total Marital Assets and Marital Asset Value to Husband $162,766.00

7. Husband must assume and pay the following marital debts: [Mortgage on Roosevelt Road as of Petition Date--$134,111.62; One-half of any state and federal income taxes for 2012—unknown; "Unsecured Debts" Listed in Paragraph 33 of Findings (page 6) of this Order--$56,119.77; Cash Payment from Husband to Wife (Dissipation Equalization Payment)--$91,000; One-half of Pre-Petition state and federal income taxes for 2012—unknown.]

Total Liabilities to Husband $281,231.39

8. Net Marital Estate to Husband $(118,465.39)

9.  The division of the marital estate provided above warrants further explanation.  First, the marital estate (at least as to assets pertaining to which there was evidence introduced) is essentially insolvent.  However, there are some unusual circumstances that were considered.  First, the Roosevelt Road Property is not being treated as a marital asset because of the Prenuptial Agreement.  However, the indebtedness secured by that property is a marital liability.  It is a line of credit drawn on by the parties during their marriage.  Further, Husband is being ordered to pay the Dissipation Equalization Payment discussed above.  Husband shall pay said Dissipation Equalization Payment to Wife within 60 days following the date hereof.  Wife is hereby awarded a judgment lien against the Roosevelt Road Property to secure that obligation.

10.  Husband should also receive the full right, title, interest and possession to the following assets upon which the parties have placed no value:

> a. Any bank or other financial institution accounts and the funds contained therein that are solely in Husband's name that have not been identified hereinabove.

> b. Any insurance on Husband's life including all beneficial interest therein and rights of ownership thereto that have not been identified hereinabove and upon which the parties have placed no value.

11. Wife should also receive the full right, title, interest and possession to the following marital assets:

> a. Any bank or other financial institution accounts and the funds contained therein that are solely in Wife's name that have not been identified hereinabove.

b. Any insurance on Wife's life including all beneficial interest therein and rights of ownership thereto that have not been identified hereinabove and upon which the parties have placed no value.

\* \* \*

14.  Post-Decree Spousal Maintenance:  No post-decree spousal maintenance has been requested and none is being ordered.  No portion of the pre-decree spousal maintenance shall be allocated to Wife or affect the division and payments provided for herein.  Further, the parties evenly divided the proceeds from a pontoon boat during the pendency of this proceeding.  Therefore, that boat and the proceeds thereof are not dealt with in this Order.

15.  Attorney Fees:  Wife has requested that Husband be ordered to pay the majority of Wife's attorney fees.  Neither party has engaged in any misconduct or taken unreasonable positions with respect to this proceeding.  Wife presented no evidence as to her income.  Husband's income is limited to disability payments.  Pursuant to I.C. [§] 31-15-10-1, and taking into consideration the relative earnings, earning ability, economic circumstances, any misconduct of either or both parties that directly results in additional litigation expenses, and the available resources of both parties, the Court finds that neither party should pay the other's attorney fees or expenses incurred in this case.

Appellant's App. Vol. II at 14-27.  This appeal ensued.

# Discussion and Decision

## *Standard of Review*

[5] In *Trabucco v. Trabucco*, 944 N.E.2d 544, 548-49 (Ind. Ct. App. 2011), *trans. denied*, we set out the applicable standard of review where, as here, a party requests that the trial court issue findings and conclusions.

> When findings and conclusions thereon are entered by the trial court pursuant to the request of any party to the action, we apply a two-tiered standard of review.
>
> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Id.* (quoting *Balicki v. Balicki*, 837 N.E.2d 532, 535-36 (Ind. Ct. App. 2005), *trans. denied*) (internal citations omitted).

### Issue One:  Division of Marital Estate

Husband contends that the trial court's division of the marital estate was clearly erroneous for two reasons:  (1) because the court "improperly clawed [the $182,000 in dissipated assets] back into the marital estate" and ordered him to pay Wife $91,000 as a "dissipation equalization payment"; and (2) because the court awarded Wife assets in excess of the net value of the marital estate. Appellant's Br. at 9-10.  We address each contention in turn.[1]

### Dissipation Equalization Payment

Husband asserts that the trial court erroneously included in the marital estate the $182,000 he had dissipated before the date of the parties' final separation. Thus, Husband maintains that the dissipation equalization payment to Wife is clearly erroneous "because the dissipation of assets can only affect the distribution of assets existing at the time of final separation and cannot bring assets back into the marital estate if the dissipation occurred prior to separation." *Id.* at 10.  The trial court did not err.

Indiana Code Section 31-15-7-5 provides as follows:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable.  However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

---

[1]  Husband does not challenge the trial court's finding that he dissipated marital assets.

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:
        (A) before the marriage; or
        (B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) *The conduct of the parties during the marriage as related to the disposition or dissipation of their property*.

(5) The earnings or earning ability of the parties as related to:
        (A) a final division of property; and
        (B) a final determination of the property rights of the parties.

(Emphasis added).

[9]     Here, the trial court did not claw back the dissipated assets but, rather, in its clearly written findings and conclusions explicitly excluded from the marital estate the $182,000 Husband gave to his daughter. Then, in distributing the marital estate, the court deviated from the presumptive equal division because of Husband's dissipation of those significant assets "so near to the Petition Date." Appellant's App. Vol. II at 22. Accordingly, the court awarded to Wife marital assets from the estate that it valued at $97,000, which included $91,000

as a dissipation equalization payment.  Husband has not demonstrated error.  *See, e.g.*, *Goodman v. Goodman*, 754 N.E.2d 595, 600 (Ind. Ct. App. 2001) (holding trial court properly considered statutory factors, including husband's dissipation of marital assets during the marriage, in awarding wife "nearly the entire marital estate").

[10]     Still, citing this court's opinion in *Pitman v. Pitman*, 721 N.E.2d 260 (Ind. Ct. App. 1999), Husband asserts that a trial court "may not compensate a party for pre-separation dissipation."  Husband maintains that, because his dissipation of assets occurred prior to the parties' separation, the trial court was prohibited from compensating Wife for those assets.  But Husband's reliance on *Pitman* is misplaced.

[11]     In *Pitman*, just prior to a separation from his wife, husband sold valuable shares of stock in a closely-held family corporation to his sister and her husband for a total of $2 consideration.  The trial court found, and this court agreed, that that sale constituted a dissipation of marital assets.  *Id.* at 265.  The trial court compensated wife for the dissipation by granting her a "money judgment" against husband.  *Id.* at 266.  On appeal, husband argued, and we agreed, that

> the judgment granted to Wife exceeds the value of the portion of marital property that was awarded to Wife.[]  Therefore, Wife's monetary judgment was not based upon an award of marital property but was instead an award to compensate Wife for the loss of the shares of S.D.P. stock.  The monetary judgment disregards the principle that "*a trial court may not compensate a party for pre-separation dissipation*," and the award of that judgment was an abuse of discretion.  *Sloss[ v. Sloss (In re Sloss)]*, 526 N.E.2d

[1036,] 1040[ (Ind. Ct. App. 1988)]; *see also McManama[ v. McManama (In re McManama)]*, 272 Ind. [483,] 487, 399 N.E.2d [371,] 373[ (1980)].

*Id.* at 266-67 (emphasis added).

[12]   However, the court explained further as follows:

> We are mindful of the result in this case. The trial court properly found that Husband transferred his shares of S.D.P. to his sister and brother-in-law with the purpose of preventing Wife from realizing any gain from the shares, and our holding that the trial court improperly granted a judgment to Wife appears to allow Husband to escape the consequences of his dissipation. However, rather than stipulate to the division of the parties' real and personal property at the hearing, *Wife could have sought to receive a larger portion of the marital estate in light of Husband's dissipation of the shares of stock.* See, e.g., *Sloss*, 526 N.E.2d at 1039 (affirming a trial court's award to wife of net assets worth $32,575.96 and its award to husband of a net liability of $103,509 due to husband's dissipation); *Planert v. Planert*, 478 N.E.2d 1251, 1253-1254 (Ind. Ct. App. 1985) (affirming a trial court's division of property which granted the parties' home, their personal property and their car to wife, but only granted the parties' cemetery plots to husband due to his dissipation of marital assets).

*Id.* at 267 (emphasis added).

[13]   Here, Wife did not stipulate to the division of the marital estate, and the trial court properly awarded Wife marital assets from the estate that totaled $97,000 in light of Husband's dissipation of the $182,000. Thus, *Pitman* is inapposite here. Further, to the extent Husband cites *Pitman* as support for a general rule

that a trial court "may not compensate a party for pre-separation dissipation," Husband is incorrect. It is well settled that, in determining whether a party has dissipated assets, a trial court may consider evidence of either pre- or post-separation dissipation. *Balicki*, 837 N.E.2d at 540. And this court has observed that dissipation that occurs "during the breakdown of the marriage, *just prior to filing a petition* or during the pendency of an action, may require heightened scrutiny." *Coyle v. Coyle (In re Coyle)*, 671 N.E.2d 938, 943 (Ind. Ct. App. 1996) (emphasis added).

[14] In *In re McManama*, our Supreme Court held that a trial court *may* compensate a spouse for pre-separation dissipation of marital assets as long as such compensation comes from marital assets in which the parties have a vested present interest at dissolution and not, for instance, from a spouse's future income.[2] 399 N.E.2d at 373. Here, at the time of dissolution, the marital estate included a CD worth over $100,000, which the trial court awarded to Husband. That asset, alone, was sufficient to cover the dissipation equalization payment to Wife. The trial court did not err when it divided the marital estate.

### *Value of Marital Estate*

[15] Husband also contends that the trial court erred when it awarded Wife "assets in excess of the net value of the marital estate." Appellant's Br. at 12. It is well

---

[2] A court may also provide compensation for pre-separation dissipation "by way of an award of either support or maintenance" where authorized by statute to do so. *See In re McManama*, 399 N.E.2d at 373.

settled that a property division cannot exceed the value of the *marital assets* without being considered an improper form of maintenance and an abuse of discretion. *Smith v. Smith*, 938 N.E.2d 857, 861 (Ind. Ct. App. 2010). But this court has also held that there is "no authority for the position that a cash award constitutes an impermissible form of maintenance if that award exceeds the *net value* of the marital estate." *Wells v. Wells*, 489 N.E.2d 972, 976 (Ind. Ct. App. 1986) (emphasis added).

[16] Here, the trial court valued the parties' marital assets at more than $160,000. As such, the court's award to Wife of $97,000 was within the marital assets. Husband appears to confuse marital assets with the marital estate, which includes both assets and liabilities. *See Gard v. Gard*, 825 N.E.2d 907, 910 (Ind. Ct. App. 2005). Husband's contention that the trial court erred when it awarded Wife that amount simply because it exceeded the *net* value of the marital estate is without merit.[3] *See id.*

---

[3] Husband also asks us to "remand the case to the trial court for consideration of an award of appellate attorney's fees and expenses." Appellant's Br. at 13. But, while Husband cites case law stating that a trial court has authority to order a party to pay a reasonable amount for the costs of the other party maintaining or defending legal proceedings in a dissolution action, he does not present cogent argument in support of such an award in this case. And Husband does not challenge the trial court's finding that that "neither party should pay the other's attorney fees or expenses incurred in this case." Appellant's App. Vol. II at 27. Accordingly, we reject Husband's request for appellate attorney's fees.

## Cross-Appeal

### Issue Two: Premarital Agreement

[17]  Wife contends that the trial court erred when it denied her motion for partial summary judgment to determine the enforceability of the parties' premarital agreement.[4]  In particular, in her summary judgment motion, Wife argued that the agreement was not a premarital agreement but was only a cohabitation agreement.  We review the trial court's grant or denial of a motion for summary judgment *de novo*, and we construe the designated evidence in the manner most favorable to the summary judgment nonmovant.  *Hughley v. State*, 15 N.E.3d 1000, 1003-04 (Ind. 2014).  Further, "we will affirm the trial court's ruling based on any theory supported by the record evidence."  *Markey v. Estate of Markey*, 38 N.E.3d 1003, 1006-07 (Ind. 2015).

[18]  Construction of the terms of a written contract generally is a pure question of law.  *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017), *trans. denied*.  The goal of contract interpretation is to determine the intent of the parties when they made the agreement.  *Id.*  This court must examine the plain language of the contract, read it in context and, whenever possible, construe it so as to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole.  *Id.*  If contract language is unambiguous, this court may not look to extrinsic evidence to expand, vary, or

---

[4] Wife does not challenge the trial court's findings and conclusions regarding the enforceability of the premarital agreement in the final decree.

explain the instrument but must determine the parties' intent from the four corners of the instrument. *Id.*

[19] Wife contends that the premarital agreement is unambiguous and was not executed in contemplation of marriage but was executed in contemplation of the parties' cohabitation. Accordingly, we determine the parties' intent from the four corners of the agreement, *see id.*, which provides as follows:

> *Prenuptial agreement* between Monty Layne and Sudie Hill
>
> As they are *currently living together* at 23l03 Roosevelt Road. Which solely belongs to Monty Layne. Let it be understood that Sudie Hill has no rights what so ever in any real estate at the mentioned address. She cannot and will not make any claims what so ever on the house, barn or any contents. That was all acquired before the relationship. In the event that a circumstance arrives that she shall vacate the premises. It will be entirely up to Monty Layne himself as to what she may take with her in the case if it should arise. She will be able to take her clothing and personal needs with her.
>
> With God as their witness Monty and Sudie have signed this agreement and it will hold up in any court of law. As they sign this agreement they pray that this *prenuptial* will never have to be used.

Appellee's App. Vol. II at 7 (emphases added).

[20] We hold that the premarital agreement is exactly what it says it is. In addition to being titled "prenuptial agreement," it states that the parties are "currently living together," which negates Wife's contention that the agreement was made in contemplation of the parties' cohabitation. *Id.* In addition, the final sentence

again refers to the agreement as "this prenuptial." *Id.* While perhaps unartfully drafted, the agreement is a premarital agreement, and the trial court did not err when it denied Wife's motion for partial summary judgment on this issue.

### *Issue Three: Division of Marital Estate*

[21] Finally, Wife contends that the trial court abused its discretion when it excluded from the marital estate both the marital residence and Husband's ATV. Wife maintains that, despite the premarital agreement, which excludes from the marital estate the marital residence, she has an interest in the residence because the parties "shared payment" of "a line of credit secured" by the residence. Appellee's Br. at 18. In support of that contention, Wife cites *Kemp v. Kemp*, 485 N.E.2d 663, 667 (Ind. Ct. App. 1985), where we held that "property which is separate at its inception may lose its separate characteristic if it is not kept segregated. Specifically, money brought into a marriage as separate property becomes marital property when placed in a joint bank account with the other spouse."

[22] Wife does not explain how the use of the marital residence to secure the parties' joint debt constitutes commingling of the residence akin to the commingling of money in a joint bank account. We reject Wife's contention on this issue. The trial court did not abuse its discretion when it excluded from the marital estate the marital residence.

[23] Wife next points out, and Husband concedes, that the trial court erred when it found that Husband had purchased the ATV after the date of final separation

and excluded it from the marital estate on that basis. Husband had, in fact, purchased the ATV prior to the date of the parties' final separation. However, Husband contends that any error was harmless because he also *sold* the ATV prior to the date of the parties' final separation. We agree, and Wife does not direct us to any evidence that the proceeds from the sale were not included in the marital estate. Accordingly, to the extent the trial court erred when it excluded the ATV from the marital estate, any error was harmless.

### Conclusion

[24] The trial court did not err when it divided the marital estate. The court did not "claw back" into the marital estate the dissipated assets but excluded them from the marital estate. The trial court properly considered the dissipated assets when it divided the marital estate. The trial court did not err when it awarded Wife $97,000 in assets, including the dissipation equalization payment. Husband confuses marital assets with the net marital estate, which includes both assets and liabilities. The award to Wife does not exceed the value of the marital assets. Finally, the trial court did not err when it found that the parties' premarital agreement was valid and enforceable.

[25] Affirmed.

Bailey, J., and May, J., concur.