## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2020, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carl Paul Lamb
Carl Lamb & Associates, P.C.
Bloomington, Indiana

ATTORNEY FOR APPELLEE

William O. Harrington
Harrington Law, P.C.
Danville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Francis Perrelle,<br>*Appellant-Respondent,*<br><br>v.<br><br>Laura Perrelle,<br>*Appellee-Petitioner* | November 30, 2020<br><br>Court of Appeals Case No.<br>20A-DC-162<br><br>Appeal from the<br>Hendricks Superior Court<br><br>The Honorable<br>Mark A. Smith, Judge<br><br>Trial Court Cause No.<br>32D04-1808-DC-500 |

**Vaidik, Judge.**

# Case Summary

[1] Francis Perrelle ("Husband") appeals several aspects of the trial court's decree in his divorce from Laura Perrelle ("Wife"). We reverse and remand on the issue of post-judgment interest but affirm in all other respects.

# Facts and Procedural History

[2] The following facts are taken largely from the trial court's findings, most of which Husband does not challenge.

[3] Husband and Wife married in 2011. They have one child, S.P. ("Child"), born in 2014. Wife earns $2,494 per week gross income as a pharmacist. Husband's adjusted gross income for 2018 was $110,840, or $2,131.54 per week. He earned income from a variety of sources during the marriage. He owned and operated Perrelle Management Company LLC ("Perrelle Management"), which he used as an "umbrella" for operating several other businesses. Appellant's App. Vol. II pp. 29-30. He operated a delivery business called Delivery2Go and worked as a driver for Uber, Lyft, and one or more companies called "Radiant Global" or "Global Alliance." *Id.* at 26, 30. He also coached wrestling and football for Avon schools.

[4] In 2015, the parties established Opie Taylors LLC and purchased the Opie Taylor's restaurant in Bloomington. The purchase price was $210,000. The parties paid $60,000 down, $50,000 of which came from the sale of the majority of Delivery2Go and $10,000 of which came from joint savings. The balance

was paid with a loan from Regions Bank. Both parties executed personal guarantees for the loan, and Regions Bank was given a second mortgage on the marital residence. At the time of the final hearing, the balance on the loan was approximately $125,000.

[5] Husband was "exclusively responsible" for managing the restaurant. *Id.* at 44. The restaurant was profitable early on but struggled as time went on, with gross income of $792,960 and net income of $58,907 in 2015, gross income of $795,801 and net income of $80,910 in 2016, gross income of $640,006 and net income of $1,777 in 2017, and gross income of $545,148 and a net loss of $48,626 in 2018. As of September 2019, cash flow at the restaurant "was not heading in a positive direction." *Id.* at 45. "The marketplace for a restaurant like Opie Taylor[']s on the courthouse square in downtown Bloomington is very depressed because of (a) limited parking and (b) the amount of competition." *Id.* at 44.

[6] Husband also gambled "a lot" during the marriage. Appellant's Br. p. 23. Wife knew this and sometimes gambled with Husband, but she was not aware of the extent of his gambling or his gambling losses. Husband "exclusively handled the marital finances and referred to himself as the 'Director of Finance.'" Appellant's App. Vol. II p. 38. Husband had net gambling losses of $50,207.10 in 2015, $45,518 in 2016, $80,012 in 2017, and $39,363 in 2018—a total of $215,100.10. In a May 2017 Facebook message, Husband "admitted that he was using Opie Taylor's money to gamble." *Id.* at 40. "In August or September

2018, [Husband] wrote checks from the Opie Taylors LLC checking account in the total amount of $10,000.00 to Greektown Casino." *Id.* at 41.

[7] In August 2018, Wife filed for divorce. After the parties separated, Wife had primary physical custody of Child. Husband did not pay Wife any provisional child support, and Wife paid for Child's preschool and health-insurance premiums with no contributions from Husband. Wife also paid approximately $2,000 per month on joint marital credit cards, "the balances of which were largely caused by [Husband's] gambling-related marital waste." *Id.* at 38. Meanwhile, Husband continued to gamble. Between December 2018 and June 2019, he used $37,200 from the Delivery2Go checking account to gamble at various casinos. From the date of separation through October 2019, Husband had net gambling losses of at least $60,277. Husband also tried but failed to secure financing to buy Wife's 50% in Opie Taylors LLC.

[8] The trial court held a final hearing in November 2019 and issued its decree the next month. The trial court awarded primary physical custody to Wife and approximately 150 overnights of parenting time to Husband. In calculating child support, the court found that Husband earned the following gross weekly income during the pendency of the case: $500 from Opie Taylors LLC; $406.28 "from Perrelle Management's work for Delivery2Go, Inc."; $119.23 coaching wrestling and football; $80 "because he paid for his truck through Perrelle Management"; and $490.92 "from a combination of Uber, Lyft and Radiant Global." *Id.* at 30. The court also found that post-separation Husband "spent $37,200.00 gambling from the Chase Bank account apparently owned by

Delivery2Go, Inc.," or "approximately $1,430.00 per week." *Id.* Based on these numbers, the court found Husband "earns or can earn $1,600.00 per week," *id.* at 31, and ordered him to pay Wife child support of $93 per week. The court granted the right to claim Child as a dependent for tax purposes to Wife in odd-numbered years and Husband in even-numbered years.

[9] In addition to the prospective child-support order, the trial court found that Husband owes Wife a "retroactive provisional child support arrearage" of $5,487. *Id.* at 32. In doing so, the court noted that post-separation Husband did not pay any provisional child support to Wife and Wife paid for Child's preschool and health-insurance premiums with no contributions from Husband. The court added that because Husband did not pay Wife any provisional child support, Wife has the right to amend her 2018 tax filings to claim Child as a dependent.

[10] The trial court found that Husband's gambling dissipated the marital estate in the amount of $215,100.10 pre-separation and the amount of $60,277 post-separation—a total of $275,377.10. The court concluded this dissipation "is not insignificant and warrants deviation from the presumption of an equal division of the marital estate." *Id.* at 43. As such, the court divided the net marital estate 87% to Wife ($124,524.72) and 13% to Husband ($18,512.40).

[11] Regarding Opie Taylors LLC, the trial court denied Husband's request for more time to come up with financing to buy out Wife's 50% interest in the business, noting he "had more than a year since the Separation Date" to do so. *Id.* at 45.

The court also appointed a commissioner "to market and sell Opie Taylors LLC." *Id.* at 46.

[12] Finally, the trial court ordered Husband to pay $34,550 of Wife's $88,591 in attorney's fees and expenses, or about 39%, with post-judgment interest at 8%.

[13] Husband now appeals. In July, while the appeal was pending, the trial court issued an order (1) finding that Opie Taylor's restaurant "is not in operation at this time, is closed and shall not reopen," (2) authorizing Wife to negotiate the surrender of the lease and the sale of the equipment, furnishings, leasehold improvements, inventory, and liquor permit, and (3) terminating the appointment of the commissioner. *See Order*, Case No. 32D02-1808-DC-500 (July 9, 2020). Husband did not appeal that order.

# Discussion and Decision

## I. Child Support

[14] Husband first contends the trial court erred in determining his income for purposes of calculating child support and in finding that Husband owes a retroactive provisional child-support arrearage. A trial court's calculation of child support is presumptively valid and will be reversed only if it is clearly erroneous or contrary to law. *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008). We will consider only the evidence and reasonable inferences favorable to the judgment. *Payton v. Payton*, 847 N.E.2d 251, 253 (Ind. Ct. App. 2006).

# A. Husband's Income

[15] In calculating child support, the trial court concluded Husband "earns or can earn" $1,600 per week.[1] The court found Husband earned the following weekly income during the pendency of the case: $500 from Opie Taylors LLC; $406.28 from Perrelle Management's work for Delivery2Go; $119.23 coaching wrestling and football for Avon schools; $80 because he paid for his truck through Perrelle Management; and $490.92 from Uber, Lyft, and Radiant Global. The court also found Husband was taking about $1,430 per week from the Delivery2Go bank account, which he used to gamble.

[16] Regarding the income from Opie Taylors LLC, Husband notes the trial court ordered the sale of the business and argues this had the effect of "eliminating [his] largest source of weekly income." Appellant's Br. p. 34. However, at the time of the final decree, Opie Taylors LLC had not been sold and the restaurant was still in operation, so this source of income was not "eliminated" at that time. That the restaurant has since shut down and will not reopen might be the basis for a modification of child support going forward, but it does not make the trial court's previous determination erroneous.

[17] Husband also challenges the finding he was earning $406.28 per week from Perrelle Management's work for Delivery2Go. He notes his accountant testified

---

[1] After this appeal was filed, Husband's income decreased to $1,140 per week, and Wife's income increased to $2,960 per week. As a result, Husband's child-support obligation was reduced to $0. *See Order*, Case No. 32D02-1808-DC-500 (June 12, 2020). However, because the original child-support order was in effect for approximately six months, we will address Husband's challenge to it.

Delivery2Go was in "financial straits" and still owed him "past wages." Tr. Vol. III pp. 38-39. Husband testified there were no deposits from Delivery2Go into the Perrelle Management bank account between October 2018 and June 2019. However, none of that proves Husband was not earning income from Delivery2Go, and Husband himself acknowledged he "periodically got income from Delivery2Go." *Id.* at 170.

[18] Husband asserts the trial court's finding he was earning $490.92 per week from Uber, Lyft, and Radiant Global "ignores [Husband's] testimony that he wasn't earning as much income from said delivery services at the time of the Final Hearing." Appellant's Br. p. 36. He also says his accountant testified that in 2018 he "only earned $4,697.00 [$90.33 per week] in net income from Perrelle Management which would include the income for Delivery2Go, and Uber, Lyft, and Radiant Global." *Id.* This is a request for us to reweigh evidence and judge witness credibility, which we will not do. Husband also claims the trial court's finding "ignores the parties' tax returns which were stipulated exhibits that state otherwise." *Id.* at 37. He cites nothing in the record to support this claim, so it is waived. *See* Ind. Appellate Rule 46(A)(8)(a).

[19] Husband argues the trial court should not have included the $80 in truck payments by Perrelle Management in his income because the court "did not include the bonuses, and employee benefits that [Wife] receives from CVS" when determining her income. Appellant's Br. P. 37. He cites nothing in the record on this point, so it is waived. *See* App. R. 46(A)(8)(a). In the alternative, Husband argues that "including the 'in-kind', truck payments as income was

clearly erroneous, since at the time of the Final Hearing, [Husband] no longer possessed the truck which the Trial Court had considered in ultimately determining [Husband's] weekly gross income." Appellant's Br. pp. 37-38. He says he "was no longer expensing the monthly loan payment of his vehicle through the company after he sold the truck." *Id.* at 38. In support of this argument, he cites only his own testimony, which the trial court was free to disregard. But even if the situation with the truck had changed by the time of the final hearing, that does not change the fact Husband was receiving $80 per week in in-kind benefits from Perrelle Management during the pendency of the case, which supports a reasonable inference he would continue to receive similar benefits.

[20]     Husband argues his "$1,430.00 per week in post-separation withdraws [sic] from the Delivery2Go bank account for gambling, is not the type of 'in-kind' benefit that should be factored into the calculation of weekly gross income under Indiana Child Support Guideline 3A(1)" because Delivery2Go "was in poor condition, and any withdraws [sic] of monies from Delivery2Go post-separation would be unsustainable and therefore unreliable indicia" of his weekly income. *Id.* at 37. He adds that "the alleged post-separation withdraws [sic] for gambling are not like traditional 'in-kind' benefits like profit-sharing, paid-vacations, or employer paid retirement benefits." *Id.* Husband cites nothing in the record and no authority supporting this argument, so it is waived. *See* App. R. 46(A)(8)(a).

[21] In any event, there is evidence Husband's adjusted gross income for 2018 was $110,840, or $2,131.54 per week. That evidence alone supports the trial court's finding that Husband is capable of earning at least $1,600 per week, even if the specific sources of income change. *See* Appellant's App. Vol. II pp. 43 ("[Husband] has demonstrated a substantial capacity for earning income in a variety of settings."); 49 ("[Husband] has a demonstrated ability to sell insurance, manage a restaurant, work as a cook at a restaurant, operate a food delivery business, operate a delivery business, coach wrestling and/or football, and work as an Uber or Lyft driver."). Husband asserts that the sources of income cited by the trial court are not "dependable" and therefore should not have been considered. Appellant's Br. p. 38 (citing *Marshall v. Marshall*, 92 N.E.3d 1112, 1120-21 (Ind. Ct. App. 2018)). But if Husband's income decreases, he has a remedy: moving for a modification of child support. As already noted, Husband actually did so, successfully, while this appeal was pending. *See* note 1, *supra*.

[22] Husband has failed to convince us the trial court erred in determining his income for purposes of calculating child support.

## B. Arrearage

[23] Husband also contends the trial court erred by finding a "retroactive provisional child support arrearage" of $5,487 and by allowing Wife to claim Child as a dependent for 2018 taxes, based on the fact Husband did not pay Wife any provisional child support. He notes "there was an agreement where [Husband] did not have to pay interim child support because [Wife] made substantially

more income than [Husband]," *id.* at 39, and the provisional order provided that "[Husband] will not be required to pay any child support to [Wife] or [Wife] shall not be required to pay any child support to [Husband] until further agreement or Order of this Court," Appellant's App. Vol. II p. 70.

[24]     However, the provisional order also provided:

> That [the] parties herein understand and agree that they do not waive any rights to present evidence on any matters contained herein at the Final Hearing. As such, the terms and conditions contained herein shall be in force and effect until further agreement of the parties or until this Court has had an opportunity to issue a ruling after hearing evidence at the Final Hearing.
>
> *              *              *              *
>
> That the parties herein expressly understand and agree that any agreement contained herein does not prejudice and/or waive either party's right or ability to raise the issue for further review by this Court at further hearings, including the Final Hearing in this cause.

*Id.* at 69, 75. Moreover, Indiana Code section 31-15-4-13 provides that "[t]he issuance of a provisional order is without prejudice to the rights of the parties or the child as adjudicated at the final hearing in the proceeding." The evidence here supports the retroactive support order. Following separation, Husband did not pay Wife any provisional child support, and Wife paid for Child's preschool and health-insurance premiums without any contributions from Husband. At the same time, Wife paid approximately $2,000 per month on joint marital

credit cards, "the balances of which were largely caused by [Husband's] gambling-related marital waste."

[25] Still, Husband notes, "Post separation, [Husband] maintained making payments on his personal expenses that benefitted [Child] (i.e. his automobile loan payment and expenses) as well [as] payments on the debts and expenses of the parties, the Regions Bank loan, and all of the expenses of Opie Taylor's which [Wife] owned 50%." Appellant's Br. p. 39. He argues, "[Husband] shall be given at least some credit for said payments as they have the character of non-conforming payments, and permitted [Wife] to maintain the other marital expenses, including the costs of [preschool] and insurance premiums for [Child]." *Id.* (citing *R.R.F. v. L.L.F.*, 935 N.E.2d 243 (Ind. Ct. App. 2010)). However, other than a general citation to the provisional order, Husband cites nothing in the record that demonstrates he made the alleged payments or the amount of any such payments. As such, this argument is waived. *See* App. R. 46(A)(8)(a).

[26] Husband has not established that the trial court erred in ordering retroactive support or by allowing Wife to claim Child as a dependent for 2018.

## II. Valuation of Assets

[27] Husband contends the trial court erred by including the date-of-filing balances of the bank accounts for Delivery2Go ($16,560.07) and Opie Taylor's restaurant ($36,807.44) as marital assets. Trial courts have discretion when valuing marital assets to set any date between the date of filing and the date of

the final hearing. *Knotts v. Knotts*, 693 N.E.2d 962, 968 (Ind. Ct. App. 1998), *trans. denied*. We review such valuations only for an abuse of that discretion. *Bingley v. Bingley*, 935 N.E.2d 152, 157 (Ind. 2010). "So long as sufficient evidence and reasonable inferences support the valuation, the trial court has not abused its discretion." *Id.*

[28] Regarding the Delivery2Go bank account, Husband argues that "at most, only 10% should have been considered in valuing it for purposes of the divorce" because he owned (through Perrelle Management) only a 10% interest in Delivery2Go on the date of filing. Appellant's Br. p. 41. However, as the trial court found, Delivery2Go owed Husband an account receivable of more than $20,000. Husband contends "it wasn't likely" he would be paid that money because of "the financial difficulties facing Delivery2Go," *id.*, but the trial court also found that Delivery2Go had already paid Husband $3,750 toward that debt. In addition, the court found that between December 2018 and June 2019, Husband used $37,200 from the Delivery2Go checking account to gamble at various casinos, an indication he was still able to access large amounts of money from the account. The trial court did not abuse its discretion by using the date-of-filing balance for the Delivery2Go account.

[29] As for the Opie Taylor's account, the trial court found that it was reasonable to use the date-of-filing balance "because the evidence showed that [Husband] used 'Opie's money' to gamble." Appellant's App. Vol. II p. 37. Husband notes the trial court did not say "how much Opie's money was used for gambling," Appellant's Br. p. 42, but he does not deny he used money from Opie Taylor's

to gamble, and he does not challenge the trial court's finding that in August or September 2018 he "wrote checks from the Opie Taylors LLC checking account in the total amount of $10,000.00 to Greektown Casino." Husband also asserts "most of the $36,807.44 was earmarked for overhead and expenses," but the only evidence he cites is his own testimony, which the trial court was not required to believe. Husband has failed to establish the trial court abused its discretion by using the date-of-filing balance for the Opie Taylor's account.

## III. Division of Marital Estate

[30] Husband contends the trial court erred by awarding him only 13% of the net marital estate. Trial courts "shall presume that an equal division of the marital property between the parties is just and reasonable." Ind. Code § 31-15-7-5. However, this presumption may be rebutted by evidence of, among other things, "[t]he conduct of the parties during the marriage as related to the disposition or dissipation of their property." *Id.* at (4). Here, the trial court based its unequal division on its finding that Husband dissipated the marital estate through his gambling. Husband argues this finding is erroneous. "Our court reviews findings of dissipation in various contexts under an abuse of discretion standard." *Goodman v. Goodman*, 754 N.E.2d 595, 598 (Ind. Ct. App. 2001), *reh'g denied*.

[31] In determining whether dissipation has occurred, a court should consider:

> (1) whether the dissipating party had the intent to hide, deplete, or divert the marital asset; (2) whether the expenditure benefited the marital enterprise or was made for a purpose entirely

unrelated to the marriage; (3) whether the transaction was remote in time and effect or occurred just before the filing of a divorce petition; and (4) whether the expenditure was excessive or de minimis.

*Estudillo v. Estudillo*, 956 N.E.2d 1084, 1094 (Ind. Ct. App. 2011), *reh'g denied*. Husband argues none of these factors support the trial court's dissipation finding. We disagree.

[32]  Regarding the first factor, Husband asserts he "did not hide his gambling from [Wife], in fact, [Wife] would gamble with [Husband], and [Wife] had access to the parties' tax records and financial information that reflected the extent of [Husband's] gambling during the marriage." Appellant's Br. p. 44. However, Husband does not challenge the trial court's findings that he "exclusively handled the marital finances and referred to himself as the 'Director of Finance'" and that Wife "was unaware of **the extent** of [Husband's] gambling activity, [Husband's] gambling losses and the extent of the marital debt until the Separation Date." Appellant's App. Vol. II pp. 38-39 (emphasis added). Moreover, Husband himself "admitted that he had not been honest with [Wife] during the marriage about the extent of his gambling." *Id.* at 40.

[33]  As to the second factor, Husband contends his gambling benefitted the marriage because he sometimes won and the winnings were used to cover marital expenses. However, Husband does not deny there were also losses—massive losses. As the trial court found, Husband had net gambling losses of at least

$215,100.10 pre-separation and at least $60,277 post-separation. Husband makes no claim that his winnings exceeded his losses.

[34] On the third factor, Husband argues the trial court abused its discretion by considering post-separation dissipation because *Estudillo* refers to transactions "before the filing of a divorce petition." 956 N.E.2d at 1094. However, as Wife notes, "It is well settled that, in determining whether a party has dissipated assets, a trial court may consider evidence of either pre- or post-separation dissipation." *Layne v. Layne*, 77 N.E.3d 1254, 1263 (Ind. Ct. App. 2017), *trans. denied*.

[35] With respect to the fourth factor, Husband asserts the trial court "miscalculated" his net gambling losses. Appellant's Br. p. 45. We are not persuaded. Husband says the trial court did not account for his "net gambling winnings and losses prior to 2015," *id.*, but he does not tell us what those were. He says the trial court did not account for "discrepancies regarding the total net gambling losses," *id.*, but he does not tell us what those "discrepancies" are. He says the trial court did not account for "the discretionary monthly $1,000.00 payment [Husband] deposited into [Wife's] personal bank account," which he says "totaled $80,000.00," *id.*, but even if that amount is excluded from the losses, the remaining losses still total almost $200,000, which is far from "de minimis." And he says the trial court did not account for "the unreliability of information contained in the responses from Non-Party casinos, based upon disclaimers contained therein," *id.*, but he does not quantify the impact of that alleged error.

[36] The trial court did not abuse its discretion by finding Husband's gambling dissipated the marital estate or by ordering an uneven division of the marital estate.

## IV. Sale of Opie Taylors LLC

[37] Husband contends the trial court erred by ordering the sale of Opie Taylors LLC and, even if it did not, it erred by appointing a commissioner to handle the sale. He asks us to "vacate the order appointing the Commissioner to sell Opie's, permit [Husband] to and including 180 days from this Order to refinance Opie's and remove [Wife] from any obligation of the same[.]" Appellant's Br. p. 54. However, as noted above, while this appeal was pending the trial court issued an order (1) finding that Opie Taylor's restaurant "is not in operation at this time, is closed and shall not reopen," (2) authorizing Wife to negotiate the surrender of the lease and the sale of the equipment, furnishings, leasehold improvements, inventory, and liquor permit, and (3) terminating the appointment of the commissioner. Husband did not appeal that order. As such, Husband's argument in this regard is moot.

## V. Attorney's Fees

[38] Finally, Husband contends the trial court erred by ordering him to pay $34,550, or 39%, of Wife's attorney's fees and expenses. An award of attorney's fees in a divorce case is authorized by Indiana Code section 31-15-10-1 and can be based on the resources of the parties, their economic condition, their ability to engage in gainful employment and to earn adequate income, and other factors bearing

on the reasonableness of the award, including "the improper actions of one party necessitating the incurrence of attorney fees by the other party." *Troyer v. Troyer*, 987 N.E.2d 1130, 1142-43 (Ind. Ct. App. 2013), *reh'g denied*, *trans. denied*. We review such an award for an abuse of discretion. *Fackler v. Powell*, 923 N.E.2d 973, 980 (Ind. Ct. App. 2010).

[39] Husband argues Wife "is in a much stronger financial position" than him following the decree. Appellant's Br. p. 50. There is no dispute on that point. Wife's weekly income is about 50% higher than Husband's, and she received substantially more of the net marital estate. But the trial court did not order Husband to pay fees based on the relative financial positions of the parties. Rather, it based its decision to award fees to Wife on the following findings: (1) "issues related to Opie Taylors made the property matters in this case more complex than usual"; (2) in September 2019, the court granted Wife's request for an order compelling discovery responses from a non-party; (3) Husband had been found in contempt in relation to a tax matter and the attempt to refinance the Regions Bank loan; (4) in October 2019, Wife was forced to file a motion to compel discovery responses from Husband's new accountant; (5) during the final hearing, Husband made a request for post-dissolution rehabilitative maintenance from Wife so he could attend law school, "even though [Husband] continued to dissipate marital assets post-separation because of gambling losses"; and (6) Wife's attorney's fees relate in part to substantial discovery she had to conduct regarding dissipation. Appellant's App. Vol. II p. 51. Husband challenges only the third finding, offering several reasons we should disregard

the contempt issue (though he has not separately appealed the contempt finding). But even if we did so, the other five findings support the trial court's decision. The court did not abuse its discretion by ordering Husband to pay a portion of Wife's attorney's fees and expenses.

[40]   However, we reverse the imposition of 8% post-judgment interest on the fee award. Husband contends his "financial and income issues," along with "the fact that [Husband] received few liquid asset or assets that could easily liquidated," create "a post-dissolution scenario whereby it will be very difficult for [Husband] to pay the attorney's fees judgment," and that it was therefore "excessive" to order post-judgment interest "that amounted to at least $53.15 per week." Appellant's Br. p. 51. Wife does not respond to this argument.

[41]   There is a statute that sets post-judgment interest "on judgments for money" at 8% (unless a contract says otherwise), Ind. Code § 24-4.6-1-101, but our Supreme Court has declined to "transport[]" that statute into "the equitable world of dissolutions." *Rovai v. Rovai*, 912 N.E.2d 374, 376 (Ind. 2009). "Rather, the dissolution statutes confer upon trial courts the authority to order interest **or not** in the course of fashioning a just and reasonable division of property." *Id.* (emphasis added). Here, the trial court offered no rationale for choosing 8% post-judgment interest, which suggests it simply defaulted to the (inapplicable) statutory rate. For that reason, and because Wife does not challenge Husband's argument, we reverse this part of the decree and remand this matter to the trial court with instructions to amend the decree accordingly.

[42]     In all other respects, we affirm.

[43]     Affirmed in part and reversed and remanded in part.


Bailey, J., and Weissmann, J., concur.