FILED

Jan 18 2018, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Mark C. Guenin
Guenin Law Office, P.C.
Wabash, Indiana

ATTORNEY FOR AMICUS CURIAE
NEIGHBORHOOD CHRISTIAN LEGAL
CLINIC

Amy C. Cornell
Wabash, Indiana

ATTORNEY FOR APPELLEE

R.P. Fisher
Fisher & Ireland
Wabash, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dayne J. Marshall,<br>*Appellant-Respondent*,<br><br>v.<br><br>Angela M. Marshall,<br>*Appellee-Petitioner*. | January 18, 2018<br><br>Court of Appeals Case No.<br>85A02-1706-DR-1503<br><br>Appeal from the Wabash Superior<br>Court<br><br>The Honorable Patrick R. Miller,<br>Special Judge<br><br>Trial Court Cause No.<br>85D01-0811-DR-424 |

**Brown, Judge.**

[1] Dayne J. Marshall ("Father") appeals from the trial court's order modifying child support and raises the issue of whether the trial court erred in entering the weekly gross income of Angela M. Marshall ("Mother") on its child support obligation worksheet. Mother cross-appeals and raises a number of issues including whether the court erred in determining that she was voluntarily underemployed, in determining Father's weekly gross income, in finding her in contempt, and in denying her request for attorney fees. We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] Father and Mother were married in January of 2005 and had a child in March of 2008. In June of 2009, the trial court entered a final decree dissolving the parties' marriage, and the decree incorporated a settlement agreement related to custody, parenting time, and the division of property. The settlement agreement provided that Father and Mother would have joint legal custody, Father would have physical custody, and no child support would be due at that time. On August 30, 2010, the court entered an order which stated in part that Father had filed a motion for modification of child support and ordered that Mother begin making child support payments of fifty-two dollars per week.[1]

---

[1] The court also stated in part that Father had filed a motion for modification of parenting time, that it was concerned that Mother tested .074 on a breathalyzer test at 9:00 a.m. on a Tuesday morning when she knew she was responsible for the care of the child, and that, rather than curtail her parenting time, Mother was ordered to submit to a portable breath test thirty minutes before parenting time begins.

[3]     On April 12, 2016, Mother filed a motion for modification of child support alleging there had been a substantial and continuing change in circumstances and that application of the guidelines would result in a decrease of support of more than twenty percent. On August 5, 2016, Father filed an affidavit for citation for contempt of court stating that child support of fifty-two dollars per week was payable by Mother beginning on August 27, 2010, that Mother had willfully disobeyed the order in that she refused to pay child support, that through July 31, 2016, Mother was in arrears in the sum of $4,157, and that Mother should be required to pay all expenses incurred as a result of the violation. On April 28, 2017, the court held a hearing on the parties' motions at which they presented evidence regarding, among other matters, their work and incomes. Both parties requested attorney fees.

[4]     On June 5, 2017, the court issued an order which provided in part:

1.      The Court adopts the Child Support Obligation Worksheet attached hereto as Exhibit A. The CSOW imputes [Mother's] income on a full time, rather than a part time, basis.

2.      The Court determines that [Mother] met her burden in demonstrating a modification of child support is warranted.

3.      Therefore, the Court orders that [Father] shall pay to [Mother] child support in the amount of $58.00 per week commencing Friday April 15, 2016. [Mother]'s prior weekly child support obligation is terminated effective April 14, 2016.

* * * * *

5. [Mother]'s child support arrearage as of April 14, 2016 is $4,151.00.

6. From April 15, 2016 through April 28, 2017, [Mother] paid weekly child support, not due as a result of this modification in the sum of $2,130.00 which shall reduce her child support arrearage to $2,021.00.

7. [Father]'s child support arrearage as of and including April 28, 2017 (date of court hearing) is $3,190.00.

8. The Court offsets the parties' child support arrearages and finds that [Father] now owes a net child support arrearage as of and including April 28, 2017 of $1,169.00.

9. In addition to his regular weekly child support obligation, [Father] shall pay the sum of $25.00 per week until the child support arrears are paid in full.

*  *  *  *  *

12. For child support calculations, the Court has specifically found that:

a. [Mother] is voluntarily underemployed and therefore her income is imputed at $450.79 per week;

b. [Father] works large amounts of overtime but should not be required to do so just to pay child support and therefore his income is set at $1,608.40 per week.

13. [Mother] is hereby found in contempt of Court prior to April 14, 2016. The Court notes that as of that date [Mother] was in arrears $3,571.00 and not paying child support when due regularly and consistently.

14. [Mother] provided no reason as to why she was not paying child support consistently and regularly during said time period.

16.    Both parties have incurred substantial attorney's fees to pursue this action. Due to [Mother]'s contempt of Court she should be ordered to pay her own attorney's fees; due to the huge disparity of income between the parties, [Father] should likewise be ordered to pay his own attorney's fees.

Appellant's Appendix Volume II at 27-28. The child support obligation worksheet attached to the court's order provided that Father's weekly gross income was $1,608.40, that Mother's weekly gross income was $450.79, and that the recommended child support obligation was for Father to pay support of fifty-eight dollars per week.

## Discussion

[5]    The issue is whether the trial court's modification and findings are clearly erroneous. The parties present arguments regarding their weekly gross incomes, and Mother challenges the finding of contempt and denial of her request for attorney fees.

### A.    *The Parties' Weekly Gross Incomes*

[6]    We first address the parties' arguments regarding their weekly gross incomes for purposes of calculating child support. "We place a strong emphasis on trial court discretion in determining child support obligations and regularly acknowledge the principle that child support modifications will not be set aside unless they are clearly erroneous." *Lea v. Lea*, 691 N.E.2d 1214, 1217 (Ind. 1998) (citation and internal quotation marks omitted). Findings are clearly

erroneous only when the record contains no facts to support them either directly or by inference. *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). We give due regard to the trial court's ability to assess the credibility of witnesses. *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000), *reh'g denied*. In our review, we first consider whether the evidence supports the factual findings, and then we consider whether the findings support the judgment. *Id.* While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.* We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon*, 711 N.E.2d 1265, 1268 (Ind. 1999).

[7]     Ind. Code § 31-16-8-1 governs modification of child support orders and provides in part:

> (a)     Provisions of an order with respect to child support . . . may be modified or revoked.
>
> (b)     Except as provided in section 2 of this chapter, modification may be made only:
>
> > (1)     upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
> >
> > (2)     upon a showing that:
> >
> > > (A)     a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

(B)    the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

[8]    Indiana Child Support Guideline 3A(1) provides in part that "weekly gross income" is defined "as actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or underemployed, and imputed income based upon 'in-kind' benefits" and that "[w]eekly gross income of each parent includes income from any source, except as excluded below, and includes, but is not limited to, income from salaries, wages, commissions, bonuses, overtime, partnership distributions, [and] dividends . . . ."  Indiana Child Support Guideline 3A(2) provides that weekly gross income "from self-employment, operation of a business, rent, and royalties is defined as gross receipts minus ordinary and necessary expenses," that "[i]n general, these types of income and expenses from self-employment or operation of a business should be carefully reviewed to restrict the deductions to reasonable out-of-pocket expenditures necessary to produce income," and that weekly gross income "from self-employment may differ from a determination of business income for tax purposes."

[9]    Father maintains the trial court erred in failing to include Mother's potential income in its determination of her weekly gross income and in its child support obligation worksheet, and Mother maintains the court erred in finding that she was voluntarily underemployed and in failing to include Father's overtime income in his weekly gross income.  Also, the Neighborhood Christian Legal Clinic, as *amicus curiae*, points to the language of the Commentary to Guideline

3F[2] and argues that in this case it would be terribly unjust to award child support payments and alter arrearages to the non-custodial, underemployed parent, that it should be presumed that the custodial parent is meeting his child support obligation by paying the direct expenditures on behalf of the child, that no child support order should be entered against Father, and that, if the mathematical computation of Mother's potential income is corrected as requested by Father, this issue will be resolved in this case.

### 1. *Mother's Weekly Gross Income*

[10] Father argues that the trial court made a computational error when it entered Mother's income onto its child support obligation worksheet. In particular, Father argues the court found that Mother's income should be imputed on a full-time basis but then erroneously entered Mother's actual part-time weekly income on its worksheet. He states that, "[t]o determine what [Mother's] income would be if she was not voluntarily underemployed, one needs to determine her hourly rate by dividing $450.79 by 19.1 hours which equals $23.60 an hour," Mother's "hourly rate of $23.60 is then multiplied by 40 hours," and Mother's "imputed full time income is $944.00 a week." Appellant's Brief at 7-8.

---

[2] Subsection (1) of the Commentary to Guideline 3F states in part that "[c]ustodial parents are presumed to be meeting their obligations by direct expenditures on behalf of the child, so a support order is not entered against the custodial parent."

Mother responds that, "[w]ithout conceding that [she] is underemployed, the court did make a computational error when entering what it intended to be [her] imputed full time potential income onto the child support obligation worksheet." Appellee's Brief at 11. Mother argues on cross-appeal, however, that the court erroneously found that she was voluntarily underemployed. In support of her position, Mother argues that there are times when she has "dead space" during her workday as a self-employed cosmetologist, that her work schedule has changed because she had a baby, that her business has never been such that she would be at work forty hours a week and had business for all forty hours, and that, although she does not report the cash money she receives, she is paid less than one thousand dollars per year in cash. *Id*. at 12. In response to Mother's argument that she is not voluntarily underemployed, Father maintains that Mother has falsely claimed she works fewer hours in order to care for her newborn child as that child was not born until August 2016 and she voluntarily worked very few hours before the child was born. He also argues that Mother admits to under-reporting her income.

Indiana Child Support Guideline 3A(1) states that a parent's weekly gross income includes potential income if the parent is underemployed and that weekly gross income includes income from wages, commissions, and bonuses, and Indiana Child Support Guideline 3A(2) states that weekly gross income from self-employment or operation of a business is defined as gross receipts minus ordinary and necessary expenses.

[13]     With respect to potential income, Indiana Child Support Guideline 3A(3) provides that, if a court finds a parent is voluntarily unemployed or underemployed without just cause, it may calculate support based on the parent's potential income and that a determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community. The Commentary to Guideline 3A states that "[o]bviously, a great deal of discretion will have to be used in this determination," that one purpose of potential income is to discourage a parent from taking a lower paying job to avoid the payment of significant support, and that another purpose is to fairly allocate the support obligation when one parent remarries and, because of the income of the new spouse, chooses not to be employed. Subsection 2(c) of Commentary to Guideline 3A.

[14]     We observe that the trial court specifically found that Mother is voluntarily underemployed and that it would determine her income on a full-time rather than a part-time basis. Nevertheless, the court found that Mother's weekly gross income was $450.79 per week and adopted a child support obligation worksheet in which it entered that amount for Mother's weekly gross income, and it appears that the figure of $450.79 per week represents Mother's actual

weekly gross income based upon her earnings from her cosmetology business in 2016 and does not include an amount attributable to her potential income.[3]

[15] The record further reveals that Mother testified at the April 28, 2017 hearing that she is a self-employed cosmetologist, has remarried, and had a child during the previous August. She indicated that her current husband is a barber, she has been a cosmetologist for twelve years, she worked at Uptown Style for ten years, and that her income fluctuates quite a bit. Mother testified that she currently works on Mondays, Wednesdays, and Fridays, that her hours vary from day to day but she normally works at least eight hours on those three days, and that, before August of 2016 when she had another child, her regular schedule was Monday through Friday with varying hours.[4] She indicated she is able to work on two people at a time and those appointments may overlap and that there are also times when she was "going to have dead space" in the day as well. Transcript Volume II at 37. She further indicated that her business has never been such that she would be at work for forty hours a week and had business as a result of all forty hours. When asked why she was not working more now, Mother indicated that it is more cost beneficial for her to stay home

---

[3] Schedule C of Mother's 2016 federal tax return indicates that her business had a net profit of $23,441, and that figure divided by fifty-two weeks equals $450.79 per week.

[4] Father states that Mother works 19.1 hours, and Mother states there are times she works as little as 19.1 hours per week and there are times she works 23 or 24 hours a week. When asked, in reference to one of the documents of her business, "when we look at those schedules and the dates that you held appointments, . . . there are a lot of which you're only working about 19.1 hours a week," Mother replied "[i]t's actually a little more than that," and when asked how much more, she answered "well, Monday, Wednesday, Friday, currently. Um, eight hours Monday, eight hours Wednesday, that's sixteen hours. And then another seven, eight hours maybe on Friday. So, that would put me over nineteen." Transcript Volume II at 37.

two days a week for childcare expenses. Mother also indicated that in her best judgment she was paid less than one thousand dollars a year in cash for services or tips, that she did not report or did not always report the cash as income and did not keep very good track of the cash she received, and that she reports the tips she receives when customers pay using credit cards.

[16] The trial court admitted into evidence certain financial and appointment records from the office of Uptown Style, including several schedules showing Mother's receipts by service for 2015, the first nine months of 2016, and the period of October 1, 2016, through January 17, 2017. The documents in the record also include appointment summary reports for Mother, one covering 2015, one covering the first nine months of 2016, and one covering the period of October 1, 2016 through January 17, 2017, each of which included a schedule of her appointments by customer name, date, time, and service provided. The documents also include a schedule of transactions for Mother showing the transaction amounts by date for the periods of 2015 and the first nine months of 2016. The court also admitted Mother's 2015 and 2016 federal tax returns. Schedule C of Mother's 2015 federal tax return indicates that her business had gross receipts or sales and gross income of $36,873, total expenses of $18,146, and a net profit of $18,727. Schedule C of Mother's 2016 federal tax return indicates that her business had gross receipts or sales of $36,577, gross income of $32,115, total expenses of $8,674, and a net profit of $23,441.

[17] Based upon the record, including Mother's testimony and business records, we cannot say that the record contains no facts to support the trial court's finding

that Mother is voluntarily underemployed either directly or by inference and thus do not disturb that finding. However, we decline to make a factual determination regarding the extent to which Mother is voluntarily underemployed and the potential income which should be attributed to her weekly gross income for purposes of calculating support. The trial court, on remand, should enter an amount for Mother's weekly gross income which includes an amount attributable to her potential income based upon the testimony and documentary evidence.

### 2. *Father's Weekly Gross Income*

Mother argues on cross-appeal that the court erred in reducing Father's weekly gross income because Father earned overtime income. She argues that Father was on call every three weeks but would soon be on call every four weeks, that he is required to work a minimum of twenty percent call-outs for overtime, and that about half of Father's overtime compensation is mandatory. She also argues that the decision to exclude overtime income centers around the dependability of such income. In response, Father points to his testimony that his overtime would be reduced because a new lineman for his employer would start in June of 2017 which would reduce the amount of his available overtime. He also argues that any overtime worked is used to pay family financial obligations and bills.

Indiana Child Support Guideline 3A(1) states that weekly gross income includes salaries, wages, bonuses, and overtime. With respect to overtime and

irregular income, the Commentary to Guideline 3A provides that "[t]here are numerous forms of income that are irregular or nonguaranteed, which cause difficulty in accurately determining the gross income of a party" and that examples include "[o]vertime, commissions, bonuses, periodic partnership distributions, [and] voluntary extra work and extra hours." Subsection 2(b) to Commentary to Guideline 3A. It further provides that "[e]ach of the above items is sensitive to downturns in the economy," that "[t]he fact that overtime, for example, has been consistent for three (3) years does not guarantee that it will continue in a poor economy," that "it is not the intent of the Guidelines to require a party who has worked sixty (60) hour weeks to continue doing so indefinitely just to meet a support obligation that is based on that higher level of earnings," and that "[c]are should be taken to set support based on dependable income, while at the same time providing children with the support to which they are entitled." *Id.* The Commentary also provides that, "[w]hen the court determines that it is appropriate to include irregular income, an equitable method of treating such income may be to require the obligor to pay a fixed percentage of overtime, bonuses, etc., in child support on a periodic but predetermined basis (weekly, bi-weekly, monthly, quarterly) rather than by the process of determining the average of the irregular income by past history and including it in the obligor's gross income calculation."

[20] The trial court found that Father works large amounts of overtime. Indiana Child Support Guideline 3A is clear that weekly gross income includes income from overtime. The Commentary "indicates the underlying philosophy with

respect to this type of income when it states, '[c]are should be taken to set support based upon dependable income, while at the same time providing children with the support to which they are entitled.'" *Thompson v. Thompson*, 696 N.E.2d 80, 83 (Ind. Ct. App. 1998) (citing Subsection 2(b) to Commentary to Guideline 3A). From the discussion in the Commentary, "it is clear that the decision to exclude overtime or bonus income centers around the dependability of such income" and "[i]t is also clear that if the income is dependable, it should not be excluded without proper consideration." *Id.* "The thrust of the commentary and related cases is that the trial court's discretion in excluding overtime . . . income is grounded in a determination that the income is not dependable or would place a hardship on a parent to maintain." *Id.* at 84. In addition to articulating its reasons for excluding this type of income, the trial court's reasoning must indicate that its determination was made in light of these principles. *Id.*

[21] The record reveals that Father's statement of earnings for the pay period ending December 17, 2016, indicates that he had year-to-date overtime of 328 hours and year-to-date overtime pay of $19,633.07. It further indicates that Father received additional earnings of $6,856.85 for "Inclement Weather" and $4,743.87 for "Doubletime Pay." Petitioner's Exhibit 2. Father's federal income tax return for 2015 indicated his wages for that year were $98,302. Father testified at the April 28, 2017 hearing that he had worked as a lineman for his employer for fifteen years. With respect to overtime, he testified "we are to carry a twenty percent call out, um, minimum for every time and then, uh,

we go on on call every, uh, right now, every three weeks soon to be every four weeks." Transcript Volume II at 12-13. He testified: "I'm on call every three weeks soon to be every four weeks starting in June." *Id*. at 13. When asked "is this mandatory, that twenty percent," Father answered affirmatively. *Id*. He testified that only journeymen can take on call, in June an apprentice would become a journeyman and be placed on the on call rotation, and that would reduce his overtime. He indicated that he had not been working all of the overtime he could work. When asked to estimate how much of his overtime was mandatory in 2015, Father indicated "I'd say maybe close to half." *Id*. at 16. Father also indicated that he believed he would receive a two percent raise in May.

[22] The trial court's decision in this case does not show that it considered the dependability of Father's overtime and other additional income. Based upon the record, including Father's previous overtime earnings and his testimony that at least a portion of his overtime is and will continue to be mandatory, we conclude that the trial court's finding that all of the overtime and additional income which Father may earn should be excluded from his weekly gross income is clearly erroneous. We reverse the trial court's exclusion of all of Father's overtime and additional income and remand with instructions to include Father's overtime and additional income, and only to the extent the trial court determines the income is dependable based upon the evidence, in his weekly gross income. *See Thompson*, 696 N.E.2d at 84 (holding that the trial court's decision did not indicate that it considered the dependability of the

husband's overtime and bonus income, reversing the exclusion of the additional income, and remanding for reconsideration of whether the overtime and bonus income should be excluded from his weekly gross income).

[23] In summary, we remand with instructions for the trial court to evaluate the evidence presented, without the necessity of holding another hearing, to calculate Mother's weekly gross income including her potential income, to calculate Father's weekly gross income including his dependable overtime and additional income, to accordingly recalculate the parties' child support obligations including their obligations for uninsured health care expenses and enter a modification of support if warranted pursuant to Ind. Code § 31-16-8-1. The court is also to determine the amount of any credit for any overpayment and the current amount that Mother or Father, as the case may be, owes the other party, all consistent with this opinion.

B.    *Contempt Finding*

[24] Mother asserts that the trial court erred in finding her in contempt. She argues that, although she was in arrears in her support payments by $4,151 as of April 12, 2016, the trial court offset her arrearage and that thus finding her in contempt for nonpayment would be punitive. Father responds that Mother's arrearage reflects non-payment of court-ordered support for 79.82 weeks.

[25] Ind. Code § 34-47-3-1 provides in part that "[a] person who is guilty of any willful disobedience of any process, or any order lawfully issued: (1) by any court of record . . . is guilty of an indirect contempt of the court that issued the

process or order." Contempt is a remedy available for failure to pay support only upon a finding that a delinquency in support was the result of a willful failure by the parent to comply with the support order and that the parent had the financial ability to comply. *Moore v. Liggins*, 685 N.E.2d 57, 64 (Ind. Ct. App. 1997). Once the person seeking contempt establishes a support obligation and a delinquency in the obligation, then the burden shifts to the person charged with contempt to prove that the failure to meet the support obligation was not willful or otherwise excused. *Id*. at 64-65.

[26] The trial court entered an order on August 30, 2010, which ordered Mother to pay child support of fifty-two dollars per week. In its June 5, 2017 order, the court stated that Mother's arrearage as of April 14, 2016, was either $4,151 or $3,571.[5] The court further found that Mother was not paying child support when due regularly and consistently and that she did not provide a reason. Mother testified at the April 28, 2017 hearing that she had not paid child support on a regular basis, and she states in her appellee's brief that, when she filed her motion to modify support on April 12, 2016, her arrearage was $4,151. Father presented a payment history produced by the Wabash Circuit/Superior Court Clerk showing Mother's support payments from 2010 through 2017, and he presented a summary worksheet of an arrearage calculation over time from

---

[5] We note that, in its June 5, 2017 order, the trial court stated in paragraph 5 that Mother's arrearage as of April 14, 2016 was $4,151 and in paragraph 13 that as of April 14, 2016, she was $3,571 in arrears. The trial court should clarify on remand the amount of Mother's arrearage and amount of any credit against Mother's arrearage after entering findings regarding the parties' incomes and determining any credit for support payments made.

2011 until 2017 which was prepared with his counsel's assistance. The evidence also reveals that Mother has been a cosmetologist for twelve years, has worked at Uptown Style for ten years, and prior to August of 2016, worked five days a week. Mother did not pay her weekly child support obligation as ordered by the court, accumulated a significant arrearage, and did not argue or establish that she did not have the financial ability to comply with the court's support order.[6] We do not disturb the trial court's contempt finding.

### C.   *Attorney Fees*

[27]   Mother also asserts the trial court erred in denying her request for attorney fees. A trial court may periodically order a party to a child support proceeding to pay a reasonable amount for attorney fees. *See* Ind. Code § 31-16-11-1. In assessing attorney fees, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors that bear on the reasonableness of the award. *McGuire v. McGuire*, 880 N.E.2d 297, 303 (Ind. Ct. App. 2008). Under Ind. Code § 31-16-11-1, a trial court has broad discretion to impose attorney's fees on either parent. *Thompson v. Thompson*, 868 N.E.2d

---

[6] Mother also argues she can do nothing to purge herself of any contempt. The Indiana Supreme Court has stated that the requirement that a party have the opportunity to purge itself of contempt has typically only applied to cases where the trial court has ordered jail time to coerce action by the contemnor. *Reynolds v. Reynolds*, 64 N.E.3d 829, 835 (Ind. 2016). In *Reynolds*, the trial court found the father in contempt for failing to provide tax documentation to the mother as ordered. *Id*. at 831. On appeal, observed that the father was not ordered to serve any jail time, did not make any showing as to why he should be allowed to purge the contempt, and could have produced or permitted inspection of the tax documentation prior to the parties appearing in court and failed to do so, and the Court held that it was not necessary for the trial court to outline ways in which the father may be purged of contempt. *Id*. at 836. The trial court here was not required, under the circumstances, to outline ways in which Mother may be purged of contempt for failure to pay a significant amount of child support as ordered over a lengthy period of time.

862, 870 (Ind. Ct. App. 2007). We may reverse an order for the payment of attorney's fees only when the award is clearly against the logic and effect of the facts and circumstances before the court. *Id*. The court may also consider any misconduct on the part of either of the parties that creates additional legal expenses not otherwise anticipated. *Id.*

[28] The trial court here found that the parties should pay their own attorney fees and pointed to Mother's contempt of court and the disparity of the parties' incomes. Based upon the record, including the fact Mother did not pay court-ordered support for many weeks and accumulated a significant arrearage, we cannot conclude that the trial court's decision not to award attorney fees to Mother was clearly against the logic and effect of the facts and circumstances before it.

## *Conclusion*

[29] For the foregoing reasons, we affirm the trial court's contempt finding and denial of Mother's request for attorney fees, and we reverse and remand for a determination of the weekly gross incomes of Father and Mother and for entry of an amended weekly child support obligation and determination of the amount owed by either party based upon the evidence consistent with this decision.

[30] Affirmed in part, reversed in part, and remanded.

[31] Baker, J., and Riley, J., concur.