## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 18 2019, 7:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew Bernlohr
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Taylor C. Byrley
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of J.H. (Minor Child)

and

C.Q. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

February 18, 2019

Court of Appeals Case No.
18A-JT-2257

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Larry E. Bradley, Magistrate

Trial Court Cause No.
49D09-1804-JT-501

**Bailey, Judge.**

# Case Summary

[1] C.Q. ("Father") appeals the trial court's judgment terminating his parental rights to J.H. ("Child"). He raises the following two restated issues on appeal:

> 1. Whether the trial court clearly erred when it held that there was a reasonable probability that Father will not remedy the conditions that led to Child's removal.

> 2. Whether the trial court clearly erred when it held that termination of Father's parental rights is in Child's best interests.

[2] We affirm.

# Facts and Procedural History

[3] Father and D.H. ("Mother")[1] are the parents of Child, who was born on March 26, 2014. Father had a history of drug convictions prior to Child's birth. In addition, on March 6, 2014, Father was arrested and charged with possession of cocaine, resisting law enforcement, obstruction of justice, and driving while license suspended. On November 19, 2014, pursuant to a plea agreement, Father pled guilty to possession of cocaine, resisting law enforcement, and obstruction of justice, and the charge for driving while license suspended was dismissed. As a result, Father served approximately ten months in Marion

---

[1] Mother consented to adoption of Child by Child's maternal grandmother.

County Jail, followed by a nine-month sentence in Hamilton County to be served in work release. Father was released from jail in December of 2014. In December of 2015, Father was arrested again and charged with operating a vehicle while intoxicated. Father made bond and was out of jail as of December 17, 2015.

[4] On March 22, 2016, the Indiana Department of Child Services ("DCS") filed a child in need of services ("CHINS") petition alleging that Mother had failed to provide Child with a safe, stable, and appropriate living environment and had tested positive for controlled substances. Father did not appear at the March 22 initial detention hearing, and the court ordered DCS to serve Father with CHINS documents by publication. Child was placed in relative care with her maternal grandmother. On June 6, 2016, Child was found to be a CHINS. Father did not appear at the June 6 fact-finding hearing and his whereabouts were unknown to the court; therefore, Father was served with the CHINS order by publication.

[5] On July 25, 2016, the trial court held a hearing on DCS's motion for a default CHINS finding as to Father, at which Father failed to appear. The court noted that DCS had made diligent efforts to locate Father and that service sent to his last known address was returned undeliverable. The court further noted that Father had been served notice by publication three times between the dates of June 2 and June 16, 2016, but he had failed to respond. The trial court found Child to be a CHINS as to Father by default and noted that Father had not appeared in court, contacted DCS, or participated in any CHINS services. Pet.

Ex. 23. The court found that Father was "unavailable and unable to parent [Child]." *Id*. The court proceeded to disposition on that date and ordered Child's continued placement with her maternal grandmother. The court ordered no services for Father until he appeared in court or in the DCS offices and "demonstrate[d] a desire and ability to care for [Child]." *Id*.

[6] In February of 2017, Father was again arrested and charged with possession of various narcotics, possession of an unlicensed handgun, and neglect of a dependent. In May of 2017, Father was arrested again and charged with operating a vehicle after being a habitual traffic offender. Father was not incarcerated from May of 2017 to September of 2017, at which time he was once again arrested and charged with possession of marijuana.

[7] DCS filed a termination of parental rights action as to Child in June of 2017, and Father was served notice on July 7, 2017. Father requested and was appointed counsel in the June 2017 termination proceeding, and he attended pre-trial conferences held on July 28, 2017, and August 4, 2017. However, because Mother participated in services, the June 2017 termination action was dismissed.

[8] On April 13, 2018, DCS filed another petition to terminate Mother's and Father's parental rights to Child. App. at 18. On July 20, Mother consented to Child's adoption by maternal grandmother, and the court dismissed Mother from the termination action on July 27. The termination hearing as to Father's parental rights was held on August 14. Father had been on house arrest since

July of 2018 and was to continue on house arrest until December 2020; however, he appeared and testified at the August 14 termination hearing.

[9] In an order dated August 21, 2018, the trial court granted the termination petition and, in support, stated in pertinent part:

> Upon evidence presented, the Court now finds by clear and convincing evidence:
>
> * * *
>
> 7. [Child] was found to be in need of services as to her alleged father on July 25, 2016. The Court proceeded to disposition on that date, at which time [Child]'s placement continued outside the home.
>
> * * *
>
> 12. [Father] did not follow up with the IDCS or participate in the underlying CHINS action.
>
> 13. [Father] testified he did not understand about the CHINS proceeding.
>
> l4. Family Case Manager Maralla Coder texted court dates to [Father] and also explained services to him. [Father] never followed up.
>
> 15. [Father] has not contacted [Child]'s relative caregiver to request visits.

16. The sister of [Father] has had monthly contact with [Child] and her caregiver, and Family Case Manager Coder inspected the sister's house and took fingerprints prior to allowing the sister visitation with [Child].

17. [Father] has seen [Child] approximately ten times during her life.

18. There is a reasonable probability that the conditions that resulted in [Child]'s removal and continued placement outside the home will not be remedied by her alleged father. When out of periods of incarceration, [Father] failed to participate in [Child]'s underlying CHINS case when he should have known of its existence at least one year prior to trial in this matter. He was given information regarding services but failed to follow up. Further, he has had minimal contact with [Child] throughout her life. Although he claims to want to be a father to [Child], his actions demonstrate differently.

19. [Father] was placed on house arrest on July 6, 2018. House arrest will continue into December of 2020.

20. [Father] has had a lengthy criminal history during [Child]'s life which include[s] unlawful possession of a firearm and drug possession. He also has a pattern of convictions for drug possession prior to 2014.

21. Given his extensive criminal history and probability of being unavailable to parent in the future due to incarceration, there is a reasonable probability that the conditions that resulted in [Child]'s removal and continued placement outside the home will not be remedied by [Father].

22. [Child] has been placed with her maternal grandmother since the beginning of her CHINS case in March of 2016. This placement is preadoptive.

23. [Child]'s caregiver advocates in her best interests and [Child]'s needs are being met.

24. [Child]'s half sibling resides in the preadoptive home.

25. [Child] is bonded with her grandmother and brother.

26. [Child]'s grandmother does not believe that [Child] knows her father.

27. The preadoptive family's care specialist believes it to be in [Child]'s best interests that she remains in the home and that the siblings stay together.

28. There is a reasonable probability that the continuation of the parent-child relationship poses a threat to [Child]'s well-being in that it would pose as a barrier to obtaining permanency for her through an adoption into the home she has known for two and one-half years and where she is stable and bonded.

29. Family Case Manager Coder believes it to be in [Child]'s best interests that she stays with her grandmother and sibling with whom she is bonded.

30. [Child]'s Guardian ad Litem recommends termination of [Father's] parental rights and adoption into the family unit as [being] in [Child]'s best interests.

31.  Termination of the parent-child relationship is in the best interests of [Child].  Termination would allow her to be adopted into a stable and permanent home where her needs will be safely met.

32.  There exists a satisfactory plan for the future care and treatment of [Child], that being adoption.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the parent-child relationship between [Child] and her alleged father [Father] is hereby terminated.

App. at 74-75.  Father now appeals.

# Discussion and Decision

## Standard of Review

Father maintains that the trial court's order terminating his parental rights was clearly erroneous.  We begin our review of this issue by acknowledging that the traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution. *A.C. v. Ind. Dep't of Child Servs.* (*In re N.G.*), 51 N.E.3d 1167, 1170 (Ind. 2016). However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination.  *R.C. v. Ind. Dep't of Child Servs.* (*In re K.T.K.*), 989 N.E.2d 1225, 1230 (Ind. 2013). Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, *A.A. v. Ind. Dep't of Child Servs.* (*In re V.A.*), 51 N.E.3d 1140, 1151 (Ind. 2016), parental rights may be

terminated when a parent is unable or unwilling to meet his or her parental responsibilities, *In re K.T.K.*, 989 N.E.2d at 1230.

[12] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

> (A) that one (1) of the following is true:
>
> * * *
>
> > (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services.
>
> * * *

(C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2).  DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights.  *Id.* DCS's burden of proof in termination of parental rights cases is one of clear and convincing evidence.  I.C. § 31-37-14-2.

[13]  When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses.  *In re V.A.*, 51 N.E.3d at 1143. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment.  *Id.*  Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous.  *Id.*

[14]  Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon in accordance with Indiana Trial Rule 52.  When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review.  *R.Y. v. Ind. Dep't of Child Servs.* (*In re G.Y.*), 904 N.E.2d 1257, 1260 (Ind. 2009).  First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment.  *Id.*  "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Marshall v. Marshall*, 92 N.E.3d 1112, 1116 (Ind. Ct. App. 2018) (citing *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996)).  If the evidence and inferences support

the trial court's decision, we must affirm. *Z.G. v. Marion Cty. Dep't of Child Servs. (In re C.G.)*, 954 N.E.2d 910, 923 (Ind. 2011).

[15] Father does not challenge any of the trial court's relevant factual findings; rather, he challenges only the trial court's conclusions that he will not remedy the conditions that resulted in Child's removal and that termination is in the best interests of Child.[2] We address each of these contentions in turn.

## Conditions that Resulted in Child's Removal

[16] Father maintains that the trial court erred in concluding that there is a reasonable probability that the conditions that resulted in Child's removal or continued placement outside the home will not be remedied. I.C. § 31-35-2-4(b)(2)(B)(i). In determining whether the evidence supports that conclusion, we engage in a two-step analysis. *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014). "First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quotations and citations omitted). In the second step, the trial court must judge a parent's fitness to care for his or her children at the time of the termination hearing, taking into consideration evidence of changed conditions, *id.*, and reasons for the child's *continued* placement outside the home, *J.I. v. Vanderburgh Cty. Off. of Fam. &*

---

[2] In his brief, Father erroneously refers to these legal conclusions as factual findings.

*Child. (In re A.I.)*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005) (discussing I.C. § 31-35-2-4(b)(2)(B)(i)), *trans denied*.

[17] The court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child," keeping in mind that DCS is not required to rule out all possibilities of change but need only establish that there is a reasonable probability the parent's behavior will not change. *Moore v. Jasper Cty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted). And the trial court "has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination." *In re E.M.*, 4 N.E.3d at 643.

[18] Here, Child was never "removed" from Father because Child never lived with Father. Rather, Child was removed from Mother's home. Therefore, in its case against Father, the State "is required only to show [a reasonable probability] that the reason the [Child was] not placed with [Father at the time of removal] would not be remedied." *B.J. v. Gibson Cty. Div. of Fam. & Child. (In re B.D.J.)*, 728 N.E.2d 195, 200-01 (Ind. Ct. App. 2000). At the time Child was removed from Mother's home, Child was not placed with Father because his whereabouts were unknown and he failed to respond to notice by publication. Since the date of removal, Father has been repeatedly incarcerated and, during the times between incarceration, he has failed to engage in services, contact DCS, or have any significant or consistent contact with Child despite his eventual awareness of the CHINS and termination proceedings. For these reasons, Child has continued to be placed outside Father's home.

At the time of the termination hearing, Father was on house arrest for another criminal conviction. The trial court did not clearly err in determining that Father's history and pattern of criminal activity, failure to engage in services, and failure to maintain consistent contact with Child show a reasonable probability that Father will not remedy the reasons for Child's continued placement outside his home. Father's contentions to the contrary are merely requests that we reweigh the evidence, which we cannot do. *In re V.A.*, 51 N.E.3d at 1143.

## Child's Best Interests

In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't of Child Servs.* (*In re A.K.*), 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d at 224. Such evidence, "in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that

termination is in the child's best interests." *L.S. v. Ind. Dep't of Child Servs. (In re A.D.S.)*, 987 N.E.2d 1150, 1158-59 (Ind. Ct. App. 2013), *trans. denied*.

[21] Again, Father's contentions on this issue amount to requests that we reweigh the evidence, which we will not do. As discussed above, the evidence most favorable to the judgment shows a reasonable probability that Father will not remedy the reasons Child was never placed in his home. Moreover, both the Family Case Manager ("FCM") and the Guardian ad Litem ("GAL") stated that they are concerned about Child's need for permanency and they believe termination is in Child's best interests. FCM Coder testified that four-year-old Child has been living with maternal grandmother for over two years and is bonded to her and to Child's little brother, who also lives with maternal grandmother. Tr. at 65. FCM Coder testified that Child needs the stability that is provided by her maternal grandmother and that Father cannot provide. *Id*. And the GAL also recommended termination of the parent child relationship, noting Father's history of incarceration, failure to engage in services, and failure to contact Child, along with Child's need for permanency. *Id*. at 99-100. That evidence clearly and convincingly showed that termination of Father's parental rights is in Child's best interests. *In re A.D.S.*, 987 N.E.2d at 1158-59.

# Conclusion

[22] The trial court did not clearly err in holding that there was a reasonable probability that Father would not remedy the reasons Child was not placed

with him upon removal from Mother's home, and that termination of his parental rights is in Child's best interests.

[23] Affirmed.

Bradford, J., and Brown, J., concur.